1  EMILYROSE JOHNS, SBN 294319
   SIEGEL, YEE, BRUNNER & MEHTA
2  475 14th Street, Suite 500
   Oakland, California 94612
3  Telephone: (510) 839-1200
4  Facsimile: (510) 444-6698
   Email: emilyrose@siegelyee.com
5
6  DEBORAH M. GOLDEN, *Pro Hac Vice Forthcoming*
   THE LAW OFFICE OF DEBORAH M. GOLDEN
7  700 Pennsylvania Ave. SE, 2nd Floor
   Washington, DC 20003
8  Telephone: (202) 630-0332
9  Email: dgolden@debgoldenlaw.com

10 *Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.C., | ) Case No. |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES AND JURY** |
| vs. | ) **DEMAND** |
| UNITED STATES OF AMERICA; RAY GARCIA, in his individual capacity. | ) |
| Defendants. | ) |

### INTRODUCTION

1. R.C. served a sentence in the Bureau of Prisons and was housed at Federal Corrections Institution Dublin ("FCI Dublin"), known openly at the time as "the Rape Club," for approximately two years.

2. While housed at FCI Dublin, R.C. faced constant sexual harassment and abuse by then-Warden and PREA Coordinator Ray Garcia.

3. Other staff members at FCI Dublin, all the way up through Bureau of Prisons leadership, were aware of the culture of sexual abuse at FCI Dublin and did nothing to meaningfully respond or otherwise protect the people incarcerated there.

*R.C. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 1

4. R.C., a survivor of childhood sexual abuse, experienced trauma due to her abuse and still battles with her mental health to this day.

## JURISDICTION AND VENUE

5. An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a).

6. This action involves claims arising under United States and California laws. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

7. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

8. Assignment is appropriate in the Oakland Division of this Court because that is where "a substantial part of the events or omissions giving rise to the claim[s] occurred." Furthermore, several related cases have already been assigned to District Judge Yvonne Gonzalez Rogers, and Plaintiff R.C. will be filing an administrative motion to relate this case to those other cases.

## PARTIES

9. Plaintiff R.C. was at all times relevant here incarcerated in Federal Correctional Institute ("FCI") Tallahassee and FCI Dublin.

10. Defendant United States of America Federal Bureau of Prisons ("BOP") is a governmental entity that operates and is in possession and control of FCI Dublin. FCI Dublin was a federal female low-security correctional institution.

11. Defendant Ray Garcia was the Warden and PREA Coordinator during the time of the sexual abuse that is the subject of this lawsuit. He is sued in his individual capacity.

12. While acting and failing to act as alleged herein, Defendant United States had complete custody and total control of Plaintiff R.C. Plaintiff R.C. was dependent upon Defendant United States for her personal security and necessities.

13. In performing the acts and/or omissions contained herein, Defendant Garcia acted under color of federal law, and Plaintiff R.C. is informed and believes each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the

rights and personal security of Plaintiff R.C. Defendant United States knew or should have known that their conduct, attitudes, actions, and omissions were, and are, a threat to Plaintiff R.C. and to her constitutionally and statutorily protected rights. Despite this knowledge, Defendant United States failed to take steps to protect Plaintiff R.C. and to ensure her rights to safety from sexual abuse.

**FACTS**

14. From 2018 through 2020, Plaintiff R.C. was incarcerated at FCI Dublin. Plaintiff R.C. arrived at FCI Dublin from FCI Tallahassee.

15. While at FCI Tallahassee, she attempted to report misconduct that she observed to Special Investigative Services ("SIS"). When she was removed from her cell to meet with SIS, they did not want to discuss her complaints.

16. Instead, the Special Investigative Agent ("SIA") and another officer from SIS took Plaintiff R.C. to a secluded room that she knew to be staff-only.

17. There, the two men informed her that they believed that a corrections officer at the prison, Officer Baker, was bringing in contraband and engaging in sexual abuse of prisoners.

18. Plaintiff R.C. and Officer Baker had a good rapport, and the officers asked Plaintiff R.C. to take advantage of that rapport and lure Officer Baker into a specific area of the prison to proposition him for sex.

19. They explained that there were cameras in that area that would capture the intercourse, and if she was successful, they would reduce her sentence and release her from prison.

20. Plaintiff R.C. is a victim of childhood sexual abuse, and being alone in a staff-only room with two men made her concerned for her own physical safety.

21. She told them that she would help them, and they led her back to her cell.

22. When she returned to her cell, Plaintiff R.C. claimed that she was suicidal in order to be placed on suicide watch. She did so believing that she would then be able to have private conversations with trusted persons in the prison to whom she could report the proposition of the SIS officers.

23. She did report what SIS had asked her to do, and when she was returned to her cell after suicide watch, one of the officers approached her and told her that she would regret saying anything.

24. She was then transferred to FCI Dublin.

25. While at FCI Dublin, Plaintiff R.C. became intimately familiar with why it was known as "the Rape Club".

26. She experienced sexual harassment and abuse from guards regularly and saw such abuse happening to other women at Dublin.

27. When Plaintiff R.C. first encountered Defendant Garcia, he was very nice to her and she observed him being nice to other prisoners.

28. She felt as if he had earned her trust, and she was kind to him in return.

29. At this point, Defendant Garcia began making the occasional sexualized comment. At first, Plaintiff R.C. let it go, but the comments became more commonplace and uncomfortable.

30. Defendant Garcia appeared to fixate on Plaintiff R.C.

31. He started coming to her cell every time he was in the unit.

32. Plaintiff R.C., like many other prisoners, would partially cover the window to her cell to indicate that she was changing. It was a common practice and well-known among staff as an indication that someone in the cell was naked or changing.

33. Defendant Garcia started opening Plaintiff R.C.'s cell door without announcing himself or knocking, and would regularly observe her naked or using the toilet.

34. Plaintiff R.C. felt violated, but it was occurring with such brazenness and frequency that she did not feel like she could do anything to stop him.

35. Defendant Garcia was both the Warden of FCI Dublin and the PREA Coordinator, and his engagement in sexual abuse and misconduct made Plaintiff R.C. feel helpless.

36. About nine months before her release, Counselor Smith became the housing unit manager.

37. Plaintiff R.C. liked Counselor Smith and began going to Officer Smith to ask for help with things for which she had previously needed to go to Defendant Garcia.

38. Defendant Garcia appeared to get angry with Plaintiff R.C. for no longer relying on him, and he began to retaliate against her.

39. When Counselor Smith was not on duty, Defendant Garcia would harass Plaintiff R.C.

40. He continued to come to her cell and open her door when he knew she would be undressed to observe her naked.

41. He twice forced her to move housing units when Counselor Smith was on vacation.

42. During the moves, Plaintiff R.C.'s belongings were confiscated and/or destroyed.

43. On another occasion, when Counselor Smith had left for the day, Defendant Garcia accused Plaintiff R.C. of not performing her job adequately and reassigned her to handling trash with Officer Nicholas Theodore Ramos.

44. Officer Ramos, now deceased, was notorious in Dublin.

45. Plaintiff R.C. was aware of at least one other prisoner whom Officer Ramos had targeted and sexually abused.

46. Officer Ramos made his affection for Plaintiff R.C. known. When she began working for him, he flirted with her.

47. Plaintiff R.C. felt as if her reassignment to trash was meant to punish her by subjecting her to Ramos' notorious mistreatment or as a gift to Ramos because he made his desire for her known to Defendant Garcia.

48. Officer Ramos' inappropriate behavior made her incredibly uncomfortable, but mercifully, he did not escalate his behavior beyond flirting.

49. Defendant Garcia's most severe act of retaliation occurred approximately six months before Plaintiff R.C. was released from FCI Dublin.

50. Defendant Garcia asked Plaintiff R.C. to take nude photographs of herself and send them to him.

51. When she declined, he punished her by sending her to the Special Housing Unit ("SHU") for an "investigation".

52. In the SHU, Plaintiff R.C. was denied her visits and phone calls, which meant that she could not be in touch with her three young children. She was denied a radio, adequate food, and hygiene supplies. She felt completely disconnected from the outside world.

53. Plaintiff R.C. was confined in the SHU for five months without receiving any write-up or discipline.

54. She was released shortly before her release from FCI Dublin.

55. Plaintiff R.C. survived sexual abuse prior to incarceration, and this magnified how traumatizing Warden Garcia's invasions were for her. Plaintiff R.C. was in BOP custody until March 16, 2020, and she was on supervised release until March 16, 2023.

56. Plaintiff R.C. suffered tremendous traumatization after being sexually abused and retaliated against by Defendant Garcia. She began going to therapy and had to go into inpatient treatment twice. She has major depression and severe anxiety, especially around law enforcement or when working alone with men. This made her time on probation exceptionally difficult.

57. Plaintiff R.C. has bipolar disorder, and she was diagnosed with schizophrenia in 2024. These mental health disabilities have impacted Plaintiff R.C.'s ability to care for and advocate for herself.

## EXHAUSTION

58. On February 28, 2025, Plaintiff R.C., through counsel, mailed an administrative claim under the FTCA to the BOP's Western Regional Office.

59. The BOP acknowledged receipt on March 10, 2025.

60. The BOP has not substantively responded to her claim.

## EQUITABLE TOLLING

61. Plaintiff R.C. is entitled to equitable tolling for her FTCA Claim received by the BOP on March 10, 2025.

62. The FTCA's statute of limitations is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015).

63. Equitable tolling applies when 1) a plaintiff pursued their rights diligently, and 2) extraordinary circumstances prevented timely filing. *Wong v. Beebe*, 732 F. 2d 1030, 1052 (9th Cir. 2013).

64. Courts have long recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, retaliation, and coercion prevented timely filing. *See* e.g., *Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24; *Stoll v. Runyon*, 165 F. 3d 1238, 1242 (9th Cir. 1999) (equitable tolling is appropriate where sexual abuse and post-traumatic stress disorder rendered the plaintiff unable to timely pursue a claim).

65. Plaintiff R.C. clearly faced extraordinary circumstances, preventing the timely filing of her FTCA claim.

66. Because Plaintiff R.C. remained incarcerated within the BOP until March 16, 2020, and on supervised release until March 16, 2023, she continued to experience extraordinary circumstances preventing her from freely accessing the courts or safely pursuing her claims. As long as she remained under BOP custody and control, the threats, coercion, and fear of retaliation continued to silence her.

67. Although she learned that Defendant Garcia was being prosecuted, her probation officer advised her against coming forward because he said she would likely be retaliated against, a warning that Plaintiff R.C. perceived as a threat.

68. In addition, the severe traumatization she experienced caused her to need inpatient treatment and resulted in a new mental health diagnosis, schizophrenia, which has impacted her ability to care for her own activities of daily living. It has also impacted her ability to seek legal assistance.

69. A court-appointed Special Master confirmed that during the time of Plaintiff R.C.'s incarceration, "there was no safe or consistent path women could take to file sex abuse complaints," that women were "intimidated and forced to justify why they needed to complete [PREA] forms in the first place, " and that women who tried to report abuse were met with

retaliation, including solitary confinement and wrongful disciplinary infractions which extended their incarceration.[1]

70.     Plaintiff R.C. has diligently pursued her rights by initiating this claim as soon as she felt some level of safety.

71.     Plaintiff R.C. has further demonstrated that she faced extraordinary circumstances preventing her from filing within the ordinary FTCA statutory period.

72.     Defendants are not entitled to benefit from their own misconduct. Equitable tolling of Plaintiff R.C.'s statute of limitations prevents this very result. Without the equitable tolling of Plaintiff's statute of limitations, Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.4)**

73.     Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

74.     Plaintiff R.C. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employee, Defendant Garcia.

75.     The United States is named as a defendant for the acts of these individual employees under the Federal Tort Claims Act.

---

[1] Lisa Fernandez, FCI Dublin Special Master Finds 'Cascade Failures at Women's Prison, KTVU (Aug. 20, 2024), https://www.ktvu.com/news/fci-dublin-special-master-finds-cascade-failures-womens-prison; Lisa Fernandez, Special Master Issues 1st Report on FCI Dublin Sex Assault, KTVU (Aug. 19, 2024), https://www.ktvu.com/news/special-master-issues-1st-report-fci-dublin-sex-assault; Lisa Fernandez, FCI Dublin Special Master Authorized to Ensure Women Care for at Other Prisons: Judge, KTVU (May 21, 2024), https://www.ktvu.com/news/fci-dublin-special-master-authorized-to-ensure-women-cared-for-at-other-prisons-judge

*R.C. v. United States of America, et al.*, No.
Complaint for Damages and Jury Demand - 8

76. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

77. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

78. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

79. Defendant Garcia discriminated against Plaintiff R.C. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

80. By these acts, Defendant Garcia caused Plaintiff R.C. physical, mental, and emotional injuries as well as injury to her personal dignity.

**SECOND CLAIM FOR RELIEF**
**GENDER VIOLENCE**
**(against Defendant Garcia)**
**(FTCA; Cal. Civ. Code § 52.4)**

81. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

82. Plaintiff R.C. brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against Defendant Garcia.

83. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

84. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

85. Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

86. Plaintiff has a nonfrivolous argument that Defendant Garcia bears individual liability and is not shielded by the Westfall Act, 28 U.S.C. § 2679, for the acts and omissions here, which are violations of the U.S. Constitution.

87. Defendant Garcia discriminated against Plaintiff R.C. based on her gender when he repeatedly sexually abused her by physically subjecting her to sexual acts.

88. By these acts, Defendant Garcia caused Plaintiff R.C. physical, mental, and emotional injuries as well as injury to her personal dignity.

### THIRD CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (against Defendant United States)
### (FTCA; California Common Law)

89. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

90. Plaintiff R.C. brings this claim for sexual assault under the Federal Tort Claims Act for violation of her rights to be free from sexual assault pursuant to California common law against the United States based on the conduct of its employee, Defendant Garcia.

91. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

92. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

93. Defendant Garcia violated Plaintiff R.C.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

94. Defendant Garcia's sexual abuse of Plaintiff R.C. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

95. Defendant Garcia subjected Plaintiff R.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff R.C.'s person.

96. By intentionally subjecting Plaintiff R.C. to sexual acts, Defendant Garcia acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

97. By repeatedly subjecting Plaintiff R.C. to sexual acts, Defendant Garcia caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL ASSAULT**
**(against Defendant Garcia)**
**(California Common Law)**

98. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

99. Plaintiff R.C. brings this claim for sexual assault under California common law against Defendant Garcia.

100. Defendant Garcia violated Plaintiff R.C.'s right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

101. Defendant Garcia's sexual abuse of Plaintiff R.C. was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

102. Defendant Garcia subjected Plaintiff R.C. to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff R.C.'s person.

103. By intentionally subjecting Plaintiff R.C. to sexual acts, Defendant Garcia acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

104. By repeatedly subjecting Plaintiff R.C. to sexual acts, Defendant Garcia caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

**FIFTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant United States)**
**(FTCA; California Common Law)**

105. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

106. Plaintiff R.C. brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of Defendant Garcia.

107. This federal employee engaged in the wrongful conduct alleged while in the course and scope of his employment as a federal employee.

108. His position as a correctional officer was essential to his commission of tortious misconduct, which could not have occurred absent his federal employment.

109. Defendant Garcia engaged in outrageous conduct by repeatedly subjecting Plaintiff R.C. to sexual acts while she was incarcerated as an inmate in his employer's custody. He abused his authority over Plaintiff R.C. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

110. Defendant Garcia's sexual abuse caused Plaintiff R.C. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

111. Defendant Garcia intended to cause Plaintiff R.C. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of an inmate.

**SIXTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(against Defendant Garcia)**
**(California Common Law)**

112. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

113. Plaintiff R.C. brings this claim for the intentional infliction of emotional distress against Defendant Garcia.

114. Defendant Garcia engaged in outrageous conduct by repeatedly subjecting Plaintiff R.C. to sexual acts while she was incarcerated as an inmate in his employer's custody. He abused his authority over Plaintiff R.C. and his power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

115. Defendant Garcia's sexual abuse caused Plaintiff R.C. to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

116. Defendant Garcia intended to cause Plaintiff R.C. this emotional distress because he knew that emotional distress was likely to result from his sexual abuse of an inmate.

**SEVENTH CLAIM FOR RELIEF**
**BANE ACT**
**(against all Defendants)**
**(FTCA; Cal. Civ. Code § 52.1)**

117. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

118. Plaintiff R.C. was in the custody and control of the United States during all relevant times.

119. Defendant Garcia violated Plaintiff R.C.'s rights to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

120. Defendant United States, by the actions of its employee Garcia, interfered with Plaintiff R.C.'s right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth Amendment to the United States Constitution to be free of cruel and unusual punishment, by threat, intimidation, and/or coercion.

121. As a proximate result of these acts, Plaintiff R.C. sustained damage and injury.

**EIGHTH CLAIM FOR RELIEF**
**TRAFFICKING VICTIMS PROTECTION ACT**
**(against all Defendants)**
**(18 U.S.C. § 1581, *et seq.*)**

122. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

123. Defendant Garcia knowingly recruited, enticed, and solicited Plaintiff R.C. by offering benefits and things of value, such as not being placed in the SHU, for remaining silent while he engaged in sexual abuse of her.

124. Defendant Garcia sexually abused Plaintiff R.C. through force and/or coercion.

125. This conduct has caused Plaintiff R.C. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

**NINTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant United States)**
**(FTCA; Cal. Civ. Code § 52.5)**

126. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

127. Defendant Garcia knowingly recruited, enticed, and solicited Plaintiff R.C. by offering benefits and things of value, such as not being placed in the SHU, for remaining silent while he engaged in sexual abuse of her.

128. Defendant Garcia sexually abused Plaintiff R.C. through force and/or coercion.

129. Defendant United States employed Defendant Garcia, whose actions and/or inactions occurred while they were acting as federal employees under the color of law.

130. This conduct has caused Plaintiff R.C. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

**TENTH CLAIM FOR RELIEF**
**CALIFORNIA TRAFFICKING VICTIMS PROTECTION ACT**
**(against Defendant Garcia)**
**(Cal. Civ. Code § 52.5)**

131. Plaintiff R.C. repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

132. Defendant Garcia knowingly recruited, enticed, and solicited Plaintiff R.C. by offering benefits and things of value, such as not being placed in the SHU, for remaining silent while he engaged in sexual abuse of her.

133. Defendant Garcia sexually abused Plaintiff R.C. through force and/or coercion.

134. This conduct has caused Plaintiff R.C. serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

///

///

**PRAYER FOR RELIEF**

135. Plaintiff R.C. prays for judgment against Defendant, and each of them, as follows:

    (a) An award of damages, including compensatory, special, punitive, and nominal damages, to Plaintiff R.C. in an amount to be determined at trial;

    (b) An award to Plaintiff R.C. of the costs of this suit and reasonable attorneys' fees and litigation expenses, including expert witness fees; and

    (c) For such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff R.C. hereby respectfully demands a jury trial, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 8, 2025

SIEGEL, YEE, BRUNNER & MEHTA

By:_____
EmilyRose Johns

THE LAW OFFICE OF DEBORAH M. GOLDEN

By: /s/ *Deborah M. Golden*
Deborah M. Golden

DC Bar # 470-578
Motion for *pro hac vice* forthcoming

*Attorneys for Plaintiff*